IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

**ROBERTA ISON,**                             Case No. 1:17 CV 2605

    Plaintiff,

    v.                                     Magistrate Judge James R. Knepp, II

**COMMISSIONER OF SOCIAL SECURITY,**

    Defendant.                     MEMORANDUM OPINION AND ORDER

### INTRODUCTION

Plaintiff Roberta Ison ("Plaintiff") filed a Complaint against the Commissioner of Social Security ("Commissioner") seeking judicial review of the Commissioner's decision to deny disability insurance benefits ("DIB") and supplemental security income ("SSI"). (Doc. 1). The district court has jurisdiction under 42 U.S.C. §§ 1383(c) and 405(g). The parties consented to the undersigned's exercise of jurisdiction in accordance with 28 U.S.C. § 636(c) and Civil Rule 73. (Doc. 14). For the reasons stated below, the undersigned affirms the decision of the Commissioner.

### PROCEDURAL BACKGROUND

Plaintiff filed for DIB and SSI in June 2015, alleging a disability onset date of December 30, 2014. (Tr. 195-207).[1] Her claims were denied initially and upon reconsideration. (Tr. 125, 128, 133, 136). Plaintiff then requested a hearing before an administrative law judge ("ALJ"). (Tr. 140). Plaintiff (represented by counsel), and a vocational expert ("VE") testified at a hearing before the ALJ on April 11, 2017. (Tr. 55-75). On August 11, 2017, the ALJ found Plaintiff not disabled in a written decision. (Tr. 24-33). The Appeals Council denied Plaintiff's request for review, making

---

1. Plaintiff later amended her onset date to June 2, 2015. (Tr. 225).

the hearing decision the final decision of the Commissioner. (Tr. 1-6); *see* 20 C.F.R. §§ 404.955, 404.981, 416.1455, 416.1481. Plaintiff timely filed the instant action on December 14, 2017. (Doc. 1).

**FACTUAL BACKGROUND**

Personal Background and Testimony

Born in 1962, Plaintiff was 52 years old on her amended alleged onset date, and 54 at the time of the hearing. *See* Tr. 78, 225. She completed high school and one year of college; she had past work as a cashier and stock clerk. (Tr. 60-61, 227). Plaintiff alleged disability due to a herniated disc/bulging disc/arthritis, growth of bone spurs on vertebrae, arthritis, and high blood pressure. (Tr. 78). In July 2015, she told a Social Security employee she could: walk ten feet before taking a break, lift five pounds, and walk up three steps before needing a break. (Tr. 81). She also reported using a cane that was not prescribed. *Id.*

Plaintiff described back pain that was a nine on a scale of one to ten, starting three years prior. (Tr. 68-69). She underwent multiple courses of physical therapy, ablation procedures, and injections for her back pain. (Tr. 66). Physicians had not suggested surgery. (Tr. 67).

Plaintiff used a friend's rollator walker for approximately six months and subsequently received one of her own in March 2017. (Tr. 62). Prior to that, she used an unprescribed cane at the suggestion of her physical therapist. *Id.* At the time of the hearing, Plaintiff used the rollator all the time, indoors and outdoors. *Id.*

Plaintiff lived in a two-story house with her ex-husband but had not been upstairs in six months. (Tr. 64). Plaintiff could bathe independently, but her ex-husband swept and mopped. *Id.* She could dress herself, except shoes and socks, with which she required assistance. (Tr. 65). Plaintiff spent most days in a recliner with a pillow and ice packs or a heating pad. (Tr. 67). Her

ex-husband did the grocery shopping, but sometimes she accompanied him, using a mechanized cart. *Id.* If Plaintiff cleaned the house, she then "[could not] move for two days." (Tr. 69). She estimated she could sit for ten to fifteen minutes before having to stand up or lie down. (Tr. 70).

Plaintiff reduced her working hours in June 2015 and stopped working on December 2015. (Tr. 61); *see also* Tr. 230 (reporting reduction in work hours from 32 to 12 hours per week). She stopped working because she could not bend over or perform stocking duties. (Tr. 62).

Relevant Medical Evidence[2]

*Prior to Alleged Onset Date*

Plaintiff reported she broke her right fibula in 2013 and used a wheelchair and walking cast to recover. (Tr. 350, 391). Plaintiff believed her low back and right hip pain stemmed from walking abnormally after her fracture. (Tr. 350).

In June 2014, Plaintiff saw Christopher Phillips, PA-C, for lumbar spine pain. (Tr. 353-54). A right hip x-ray showed a dysplastic hip with mild degenerative changes. (Tr. 354, 361, 379). Mr. Phillips diagnosed Plaintiff with sacroiliitis and lumbar pain, started her on Prednisone, and referred her to physical therapy. (Tr. 354). Plaintiff underwent a physical therapy spine evaluation one week later. (Tr. 350-52). The physical therapist assessed sacroiliac pain and noted Plaintiff had postural deviations and tenderness to palpation along the right sacroiliac joint. (Tr. 352). Plaintiff also had an aquatic physical therapy session. (Tr. 348-49).

Later that month, an x-ray of Plaintiff's lumbar spine showed mild dextroconvex curvature of the lumbar spine, moderate facet degenerative changes at L4-5 and L5-S1, and mild disc degenerative changes at L3-4, L4-5, and L5-S1. (Tr. 347, 361, 378).

---

2. Plaintiff challenges the ALJ's consideration of her ability to ambulate. *See* Doc. 16, at 9-15. As such, the undersigned summarizes only the relevant records. *See Kennedy v. Comm'r of Soc. Sec.*, 87 F. App'x 464, 466 (6th Cir. 2003) (issues not raised in opening brief waived).

A lumbar spine MRI from July 2014 showed degenerative changes in the lower lumbar spine, which were most significant at the L5-S1 level. (Tr. 338-39, 361, 376-77). A bilateral hip x-ray from September 2014 showed mild degenerative changes. (Tr. 358, 365).

In December 2014, Plaintiff had a lumbar medial branch nerve radiofrequency ablation. (Tr. 314-16). The injection provided Plaintiff with 50% relief of her pain. *See* Tr. 312.

In March 2015, Plaintiff saw Benjamin Abraham, M.D., for pain management. (Tr. 312-13). Plaintiff reported dull, aching lower back pain, worsened by walking, standing, and sitting. (Tr. 312). On examination, she had an antalgic gait, and positive facet loading bilaterally. (Tr. 313). Her straight leg raising test was normal, and she had no strength deficits. *Id.*

*After Alleged Onset Date*

Plaintiff returned to Dr. Abraham in June 2015. (Tr. 415-16). She reported lower back pain radiating down her legs to her toes and causing cramps. (Tr. 415). On examination, Dr. Abraham found normal strength with no atrophy or tone abnormalities, and a negative straight leg raising test. (Tr. 416). Plaintiff had pain to palpation in her lumbar paraspinal muscles, positive facet loading bilaterally, and an antalgic gait. *Id.* Dr. Abraham noted Plaintiff's examination "reveal[ed] poor effort" so he was "not certain what is the cause of her new problems." *Id.* He referred her to the chronic pain rehabilitation program because conservative methods had not worked. *Id.*

In August 2015, Plaintiff began seeing Charles Choi, M.D. with NeuroSpinecare, Inc. ("NSI") for her back pain. (Tr. 391-95). Plaintiff reported her back pain began after she broke her right fibula. (Tr. 391). She had tried physical therapy and nonsteroidal anti-inflammatory medications without success. *Id.* Plaintiff reported her pain was a "10" or the "[w]orst pain ever". (Tr. 392). On examination, Plaintiff had decreased range of motion, tenderness, and pain in her lumbar spine. (Tr. 393). Her muscle strength and tone were normal, as was her coordination and

4

gait. *Id.* Plaintiff had a negative straight leg raising test; her range of motion in all four extremities was normal, with no instability. *Id.* Plaintiff's patellar and Achilles reflexes were zero bilaterally. *Id.* Dr. Choi assessed lumbosacral spondylosis without myelopathy. *Id.* Dr. Choi told Plaintiff to continue taking Aleve and to do home exercises she learned in physical therapy. (Tr. 394). Dr. Choi planned bilateral lower lumbar facet joint injection for diagnostic purposes, and if Plaintiff responded, well, a repeat radiofrequency facet nerve ablation. *Id.* He also ordered an x-ray. (Tr. 393-94).

In early September 2015, prior authorization for facet joint injection was denied because Plaintiff had not tried physical therapy and home exercises for at least three months within the prior six-month period. (Tr. 396).

Later that month, Plaintiff saw physical therapist Kevin Dusenbury. (Tr. 397-99). Plaintiff reported pain in the lumbar spine radiating to her thighs, aggravated by standing, and worse at night. (Tr. 397). Mr. Dusenbury found Plaintiff had a negative straight leg test, abnormal range of motion, and reduced strength. (Tr. 398). Her gait was abnormal ("[f]lexed, antalgic gait with rigid trunk"), and she had facet hypomobility. *Id.* Mr. Dusenbury recommended physical therapy twice per week for four to six weeks. *Id.* At her next visit three days later, Plaintiff reported pain that she rated as "9/10" (Tr. 400); she completed exercises, and Mr. Dusenbury noted Plaintiff should continue therapy. (Tr. 401). Plaintiff had two more visits (in September and early October 2015), at which Plaintiff reported pain of 10/10 (Tr. 403) and 8/10 (Tr. 406); at each, she was "[p]rogressing toward goals". (Tr. 404, 407). At her fourth and final visit, Mr. Dusenbury noted Plaintiff was able to tolerate more exercises, and had "[g]ood progression." (Tr. 407).

Plaintiff returned to Dr. Choi in November 2015 reporting her back pain worsened after five to six weeks of twice-per-week physical therapy. (Tr. 409). Dr. Choi noted an x-ray showed

5

scoliosis and diffuse arthritis. *Id.* On examination, Plaintiff had decreased range of motion, tenderness, and pain in her lumbar spine. (Tr. 385). Her muscle strength, tone, gait, and straight leg raising test were normal. *Id.* Dr. Choi continued to assess lumbosacral spondylosis without myelopathy, and noted Plaintiff had "basically failed all conservative measures." (Tr. 386). Dr. Choi therefore recommended bilateral lower lumbar facet joint injections. *Id.*

Dr. Choi performed the facet joint injections at L2, L3, L4, and L5 in December 2015 to determine if Plaintiff was a candidate for radiofrequency ablation. (Tr. 389-90). In January 2016, Plaintiff underwent the lumbar radiofrequency ablation on the right side at L2 through L5. (Tr. 420). She underwent the same procedure on the left in February. (Tr. 423).

In April 2016, Plaintiff saw Rebecca Suit, C.N.P., at NSI. (Tr. 427-31). Plaintiff reported a pain level of 6/10 with medication, and 10/10 without. (Tr. 428). On examination, Nurse Suit noted Plaintiff had decreased range of motion with flexion and extension of her lower back, tenderness to palpation in her lower back, and a positive bilateral straight leg raising tests. (Tr. 429). Her gait was antalgic – she walked in a flexed position with a cane and was unable to briefly heel or toe walk. *Id.* Plaintiff felt her medications were not working and wanted a higher dose; Nurse Suit declined and stated she would "continue medications that Dr. Choi previously directed as they do help [patient] function with [activities of daily living] and improve quality of life." *Id.* Nurse Suit ordered an MRI and a urine drug screen. (Tr. 429-30).

Plaintiff returned to Nurse Suit the following month. (Tr. 432-35). She reported a pain level of 4/10 with medication, and 7/10 without. (Tr. 433). She thought her medication helped her function and improved her quality of life. *Id.* Nurse Suit noted Plaintiff's drug screen was positive for THC and she therefore would not be given any more narcotics. *Id.* On examination, Plaintiff had decreased range of motion with flexion and extension of the low back, tenderness to palpation

in the low back, negative straight leg raising tests, and tenderness to palpation over the sacroiliac joints and bilateral hips. (Tr. 434). Plaintiff had an antalgic gait and used a cane for ambulation. *Id.* Nurse Suit instructed Plaintiff to return in one month to review her MRI and possibly proceed with injections. *Id.*

A June 2016 MRI of Plaintiff's lumbar spine showed dextroscoliosis of the upper lumbar spine, advanced foraminal stenosis at L5-S1 on the right, and foraminal stenosis at L3-4 on the left. *See* Tr. 436.

Plaintiff returned to Dr. Choi in July 2016. (Tr. 436-40). She reported "she did well for a while" after the radiofrequency ablation procedures, but her pain had recurred. (Tr. 436). On examination, Dr. Choi found decreased range of motion, tenderness, and pain in Plaintiff's lumbar spine. (Tr. 438). Her range of motion, muscle strength, and tone were normal in all four extremities. *Id.* Plaintiff's straight leg raising was "limited", but her gait was normal. (Tr. 439). Dr. Choi assessed osteoarthritis of the spine with radiculopathy, lumbar region, and lumbosacral spondylosis without myelopathy. *Id.* He noted Plaintiff had to enroll in physical therapy before a radiofrequency medial branch ablation could be considered. *Id.* Dr. Choi stated Plaintiff had "quite a bit of disability with low back pain with advanced degenerative arthritis in addition to the dextroscoliosis." *Id.* He prescribed a back brace "to provide strength, stability and some pain relief." *Id.* Later that month, Dr. Choi performed a caudal block. (Tr. 441).

In August 2016, Dr. Choi noted Plaintiff could not be scheduled for any procedures until she completed eight physical therapy sessions. (Tr. 443). Plaintiff reported she had completed three sessions. *Id.* Plaintiff reported her pain was 9/10. (Tr. 445). On examination, Dr. Choi noted decreased range of motion, tenderness, and pain in Plaintiff's lumbar spine. *Id.* Plaintiff had normal range of motion, muscle strength, and tone in all four extremities, and her gait was normal. *Id.* Dr.

Choi continued his prior diagnoses and instructed Plaintiff to return after completing physical therapy. (Tr. 446).

Plaintiff completed the required physical therapy and returned to Dr. Choi in October 2016. (Tr. 448-51). Dr. Choi noted Plaintiff's range of motion was "markedly limited" in her lower back, and that she had facet arthrosis. (Tr. 448). Plaintiff reported feeling good for five to six months after her prior radiofrequency ablation, with 80% pain relief. (Tr. 448-49). Dr. Choi noted similar findings as previously on examination, including normal gait. (Tr. 450-51). He scheduled Plaintiff for radiofrequency ablation. (Tr. 452).

Plaintiff underwent radiofrequency ablations at L2 through L5 in November and December 2016. (Tr. 461, 463).

A March 2017 "delivery ticket" from NPL Home Medical Equipment shows Plaintiff received a rollator with a seat. (Tr. 465). It lists insurance as "[n]one" and states the equipment should be "[b]ill[ed] to" Plaintiff. *Id.* The delivery ticket lists two amounts – the "Ext. Amt." and the "Co-Pay." *Id.*

Plaintiff also submitted additional evidence to the Appeals Council. *See* Tr. 14-20, 39-51.[3]

---

3. When the Appeals Council declines to review the ALJ's decision, the ALJ's decision becomes the Commissioner's final decision. *Cotton v. Sullivan*, 2 F.3d 692, 696 (6th Cir. 1993). While new and material evidence may be submitted for consideration to the Appeals Council, "we still review the ALJ's decision, not the denial of review by the appeals council." *Casey v. Sec'y of Health & Human Servs.*, 987 F.2d 1230, 1233 (6th Cir. 1993); *see also Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001) ("[E]vidence submitted to the Appeals Council after the ALJ's decision cannot be considered part of the record for purposes of substantial evidence review.") (citing *Cline v. Comm'r of Soc. Sec.*, 96 F.3d 146, 148 (6th Cir. 1996)). Although both parties summarize this evidence, Plaintiff has not argued this evidence was new and material, nor does she request a sentence six remand. As such, the undersigned does not summarize or consider this evidence here.

*Opinion Evidence*

In October 2015, State agency physician Rannie Amiri, M.D., reviewed Plaintiff's records. (Tr. 85-87). Dr. Amiri opined Plaintiff could occasionally lift or carry 20 pounds, frequently lift or carry 10 pounds, stand or walk about six hours in an eight-hour workday, and sit about six hours in an eight-hour workday. (Tr. 86). He noted Plaintiff's antalgic gait but stated there was no medically determinable impairment to explain it, and there were other normal gait findings in the record. *Id.* Dr. Amiri also noted that "[a]lthough [Plaintiff] presented with a cane during CE, this again is not considered necessary as exam and imaging findings are inconsistent with its need." *Id.* Dr. Amiri opined Plaintiff could frequently climb ramps/stairs, kneel, and crouch; she could occasionally crawl or stoop, and she could never climb ladders/ropes/scaffolds. (Tr. 86-87). Finally, Dr. Amiri opined Plaintiff should avoid all exposure to hazards. (Tr. 87).

In January 2016, State agency physician Leon Hughes, M.D., reviewed Plaintiff's records. (Tr. 110-12). Dr. Hughes affirmed Dr. Amiri's findings, with an identical explanation. (Tr. 111).

<u>VE Testimony</u>

A VE also appeared and testified at the ALJ hearing. (Tr. 70-74). He testified Plaintiff had past relevant work as a convenience store clerk and cashier. (Tr. 71). The ALJ asked the VE to consider a hypothetical individual of Plaintiff's age, education, and past work experience who was limited in the way in which the ALJ ultimately found Plaintiff to be. (Tr. 71-72). The VE testified such an individual could perform Plaintiff's past relevant work "as classified, but not as performed." (Tr. 72). The VE also testified that if the individual needed a cane for ambulation and could never climb ramps/stairs, kneel, or crouch, that individual could perform other jobs such as office helper, information clerk, or furniture rental clerk. (Tr. 72-73). Finally, the VE testified that use a rollator walker would preclude light work and limit an individual to sedentary jobs. (Tr. 73).

9

ALJ Decision

In a written decision dated August 11, 2017, the ALJ found Plaintiff met the insured status requirements for DIB through December 31, 2019, and had not engaged in substantial gainful activity since her amended alleged onset date (June 2, 2015). (Tr. 27). Plaintiff had severe impairments of spine disorders, bilateral carpal tunnel syndrome, hypertension, and obesity, but none of these impairments (singly or in combination) met or medically equaled the severity of a listed impairment. *Id.* The ALJ then determined Plaintiff had the residual functional capacity ("RFC"):

> to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except she can frequently climb ramps/stairs; never climb ladders, ropes, or scaffolds; occasionally stoop and crawl; frequently kneel and crouch; must avoid all exposure to hazards such as industrial machinery and unprotected heights; and she has the ability to use the bilateral upper extremities frequently for handling and fingering.

(Tr. 27-28). The ALJ then found Plaintiff could perform her past relevant work as a convenience store clerk as it is generally performed, but not as actually performed. (Tr. 32-33). Therefore, the ALJ found Plaintiff not disabled. (Tr. 33).

**STANDARD OF REVIEW**

In reviewing the denial of Social Security benefits, the Court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standards or has made findings of fact unsupported by substantial evidence in the record." *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997). "Substantial evidence is more than a scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Besaw v. Sec'y of Health & Human Servs.*, 966 F.2d 1028, 1030 (6th Cir. 1992). The Commissioner's findings "as to any fact if supported by substantial evidence shall be conclusive." *McClanahan v. Comm'r of Soc. Sec.*,

474 F.3d 830, 833 (6th Cir. 2006) (citing 42 U.S.C. § 405(g)). Even if substantial evidence or indeed a preponderance of the evidence supports a claimant's position, the court cannot overturn "so long as substantial evidence also supports the conclusion reached by the ALJ." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 477 (6th Cir. 2003).

## STANDARD FOR DISABILITY

Eligibility for benefits is predicated on the existence of a disability. 42 U.S.C. §§ 423(a), 1382(a). "Disability" is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. §§ 404.1505(a) & 416.905(a); *see also* 42 U.S.C. § 1382c(a)(3)(A). The Commissioner follows a five-step evaluation process—found at 20 C.F.R. §§ 404.1520 and 416.920—to determine if a claimant is disabled:

1. Was claimant engaged in a substantial gainful activity?

2. Did claimant have a medically determinable impairment, or a combination of impairments, that is "severe," which is defined as one which substantially limits an individual's ability to perform basic work activities?

3. Does the severe impairment meet one of the listed impairments?

4. What is claimant's residual functional capacity and can claimant perform past relevant work?

5. Can claimant do any other work considering her residual functional capacity, age, education, and work experience?

Under this five-step sequential analysis, the claimant has the burden of proof in Steps One through Four. *Walters,* 127 F.3d at 529. The burden shifts to the Commissioner at Step Five to establish whether the claimant has the residual functional capacity to perform available work in the national economy. *Id.* The ALJ considers the claimant's residual functional capacity, age,

education, and past work experience to determine if the claimant could perform other work. *Id.* Only if a claimant satisfies each element of the analysis, including inability to do other work, and meets the duration requirements, is she determined to be disabled. 20 C.F.R. §§ 404.1520(b)-(f) & 416.920(b)-(f); *see also Walters*, 127 F.3d at 529.

## DISCUSSION

Plaintiff raises two challenges to the ALJ's decision, both related to her ability to ambulate. First, she argues the ALJ erred in finding Plaintiff capable of light work when her ambulation difficulties preclude her from performing the walking necessary to do so; and second, she contends the ALJ failed to account for her need for an ambulatory aid. (Doc. 16, at 9-15). The Commissioner responds that the ALJ did not err, her decision is supported by substantial evidence, and the decision should be affirmed. (Doc. 17, at 11-18). For the reasons discussed below, the undersigned affirms the Commissioner's decision.

RFC Generally / Ambulation Ability

Plaintiff argues the record supports greater restrictions on Plaintiff's ability to ambulate than found by the ALJ. Specifically, she points to the definition of light work, which requires "standing or walking, off and on, for a total of approximately six hours of an eight-hour work day", SSR 83-10, 1983 WL 31251, at *6, and contends the record does not support a finding she could perform such work. She also argues the ALJ should have given greater weight to Nurse Suit's notes, and that the ALJ cherry-picked the record, focusing on only the positive findings.

Plaintiff's argument that the ALJ's analysis of Nurse Suit's notes is unsupported is not well-taken. First, although Plaintiff points to case law regarding "team" opinions, Nurse Suit did not offer a medical opinion. *See* 20 C.F.R. §§ 404.1527(a)(2); 416.927(a)(2) (defining "medical opinions" as "statements . . . that reflect judgments about the nature and severity of your

12

impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite your impairment(s), and your physical or mental restrictions."); *see also Dunlap v. Comm'r of Soc. Sec.*, 509 F. App'x 472, 476 (6th Cir. 2012) (statements made by treating physician did not constitute an "opinion" as defined in 20 C.F.R. § 404.1527(a)(2)); *see also Bass v. McMahon*, 499 F.3d 506, 510 (6th Cir. 2007) ("Since Dr. Naum made no medical judgments, the ALJ had no duty to give such observations [about claimant's gait and ambulation] controlling weight or provide good reasons for not doing so."). Nurse Suit noted her observations of Plaintiff, including her cane usage, but she did not offer an opinion regarding Plaintiff's specific functional limitations nor any explanation of a medical need for the cane. *See* Tr. 427-30, 432-35.

Second, the caselaw cited by Plaintiff to argue Nurse Suit's observations should be attributed to Dr. Choi because they worked in the same facility is from a different context. In cases involving a "team" opinion, courts have addressed whether medical source statements that are signed by both a non-acceptable medical source (such as a nurse practitioner) and a physician are entitled to controlling weight under the treating physician rule. *See, e.g., Pater v. Comm'r of Soc. Sec.*, 2016 WL 3477220, at *6-7 (N.D. Ohio) ("Under the law, there is no difference between opinions filled out and signed by a treating psychiatrist and opinions filled out by a social worker and then signed – thus adopted – by a treating psychiatrist.") (internal citation and quotation omitted); *Borden v. Comm'r of Soc. Sec.*, 2014 WL 7335176, at *9 n.2 (N.D. Ohio) ("Furthermore, a 'team' opinion signed by physician and nurse practitioner does not qualify as a treating source opinion when there is no evidence demonstrating that the statement presented to the ALJ represented the opinions of a team effort, or that the medical facility used a team approach to a claimant's mental health treatment."). Although Nurse Suit noted she saw Plaintiff under Dr. Choi's supervision (Tr. 430, 434) ("This NP saw pt under direct supervision of Dr. Choi."), her

13

treatment notes, observations and findings to which Plaintiff now points were not co-signed by Dr. Choi. *See* Tr. 427-30, 432-35. Thus, the undersigned rejects Plaintiff's argument that these records can somehow be attributed to Dr. Choi.

Third, the Court finds Plaintiff's argument regarding cherry-picking the evidence unavailing. As noted above, even if substantial evidence or indeed a preponderance of the evidence supports a claimant's position, the court cannot overturn "so long as substantial evidence also supports the conclusion reached by the ALJ." *Jones*, 336 F.3d at 477. As the Sixth Circuit has explained:

> Both claims are reducible to an allegation that DeLong levied against the ALJ below—"cherry picking" the record. The District Court observed that this allegation is seldom successful because crediting it would require a court to re-weigh record evidence. It is no more availing on appeal. *Cf. White v. Comm'r of Soc. Sec.,* 572 F.3d 272, 284 (6th Cir.2009) ("[W]e see little indication that the ALJ improperly cherry picked evidence; the same process can be described more neutrally as weighing the evidence.").

*DeLong v. Comm'r of Soc. Sec. Admin.*, 748 F.3d 723, 726 (6th Cir. 2014).

In this case, the ALJ thoroughly summarized the evidence of record, including that from Nurse Suit and Dr. Choi. (Tr. 29-31). Specifically, as it relates to Plaintiff's argument, the ALJ explained:

> While the claimant has decreased range of motion, tenderness, and pain of the lumbar spine, Dr. Choi consistently documented that the claimant's gait and coordination are normal; she has normal range of motion, normal muscle strength, and normal tone in all extremities; no instability in any extremity; and no sensory deficits. While the claimant has received treatment on a regular basis, she has not required or received frequent care for any medical condition. Significantly, the claimant reported that the RFA procedure done in February 2016 provided 80% pain relief for five to six months [citing Tr. 448-49]. From all of this, the undersigned finds that the claimant's symptoms and limitations are not as severe as alleged.
>
> Regarding the claimant's use of a cane or rollator, the record does not support medical necessity. On April 21 and May 19, 2015 [sic], nurse practitioner Rebecca Suit of NSI noted that the claimant's gait was antalgic and she was using a cane for

14

ambulation [citing Tr. 429, 434]. However, Dr. Choi of NSI consistently noted that the claimant's gait and coordination were "normal"; muscle strength and tone were normal in all extremities; and there was no instability in any extremity (see above and see [Tr. 385]). Therefore, the undersigned gives little weight to the April 21 and May 19, 2015 findings from Nurse Suit.

(Tr. 31-32).

The Court finds the ALJ's determination on this issue supported by substantial evidence.[4] Although Plaintiff is correct that there were more limiting findings in the record, it is the ALJ's duty – not this Court's – to resolve such conflicts. *See, e.g., Smith v. Halter*, 307 F.3d 377, 379 (6th Cir. 2001). And, the ALJ's decision here explains how she did so – crediting Dr. Choi's findings Plaintiff had a normal gait (Tr. 385, 393, 439, 445, 451) over Nurse Suit's antalgic gait and cane-usage findings (Tr. 429, 434). Notably, Dr. Choi made this finding both prior to and subsequent to Nurse Suit's findings of an antalgic gait and cane-usage. *See, e.g., Forester v. Comm'r of Soc. Sec.*, 2017 WL 4769006, at *4 (S.D. Ohio) ("[W]here there is conflicting evidence concerning the need for a cane, it is the ALJ's task, and not the Court's, to resolve conflicts in the evidence.") (internal quotation and citation omitted). Moreover, the ALJ correctly cited Dr. Choi's findings that although Plaintiff had ongoing decreased range of motion in her lumbar spine, with tenderness and pain, her muscle strength, tone, and range of motion in all four extremities

---

4. Plaintiff specifically objects to the ALJ's wording that "[w]hile the claimant has received treatment on a regular basis, she has not required or received frequent care for any medical condition." (Tr. 31). *See* Doc. 16, at 11. It is possible the ALJ meant to comment on the fact that Plaintiff's treatment was typically no more than once per month, with occasional two-month gaps between visits. *See* SSR 16-3p, 2017 WL 5180304, at *9 ("[I]f the frequency or extent of the treatment sought by an individual is not comparable with the degree of the individual's subjective complaints . . . we may find the alleged intensity and persistence of an individual's symptoms are inconsistent with the overall evidence of record." ). The ALJ's wording is inartful, to be sure, as Plaintiff clearly had ongoing treatment for her back condition. Regardless of any error in wording, this is not reversible error when the ALJ's decision as a whole – thoroughly summarizing the very evidence relating to Plaintiff's back condition – shows that it was considered.

continued to be normal, without any instability. *See* Tr. 393, 385, 438, 445, 450. Although Plaintiff argues that the ALJ "used the normal findings in [Plaintiff's] extremities to reach a conclusion that she is not disabled in her back" (Doc. 16, at 12), these findings of strength and tone are certainly relevant to Plaintiff's ability to ambulate. Plaintiff also argues the ALJ neglected to mention her reflex loss and positive straight-leg raises. *Id.* However, the ALJ did mention Plaintiff's positive straight leg raise with Nurse Suit in April 2016, and "limited" straight leg raise with Dr. Choi in July 2016. (Tr. 30). Moreover, there is conflicting evidence on this point. *Compare* Tr. 313, 385, 393, 398, 434 (negative straight leg raising tests), *with* Tr. 429, 439 (positive or "limited" straight leg raising tests). Again, this conflict is with the ALJ's purview to resolve. *See Smith*, 307 F.3d at 379. And, although the ALJ did not mention the reflex loss noted by Dr. Choi in August 2016 (Tr. 393), an ALJ can consider all the evidence without citing each piece, *Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 507 (6th Cir. 2006). Further, Plaintiff points to no additional evidence of reflex loss, and, in fact, at July and October 2016 appointments, Dr. Choi noted "ha[d] normal reflexes." (Tr. 438, 451).

Finally, Plaintiff argues that her complaints of pain are supported by the July 2014 and June 2016 MRIs. (Doc. 16, at 13). Specifically, Plaintiff summarizes the June 2016 MRI findings and then states (without further explanation) that the findings "establish the presence of nerve root compression." *Id.* There is, however, no finding of nerve root compression in either MRI. *See, e.g., Cole v. Colvin*, 2014 WL 2113018, at *6 (E.D. Ky.) ("The Court has reviewed the medical evidence of record and the Court has found no diagnosis of nerve root compression . . . . Furthermore, Plaintiff has not cited any medical record . . . indicating a diagnosis of nerve root compression . . . . Lumbar spinal stenosis was diagnosed on Plaintiff's MRI reports, but there is no finding that the spinal stenosis results in . . . compromise of the nerve root or spinal cord.").

16

Additionally, providers continually noted Plaintiff did not have myelopathy.[5] (Tr. 386, 393, 397-98, 416, 434, 438, 446, 451); *see Gulley v. Comm'r of Soc. Sec.*, 2017 WL 4329632, at *4 (S.D. Ohio) ("However, Dr. Shapiro did not diagnose a nerve root compression and, instead, continued to note that he did not have myelopathy. Thus, the record does not contain definitive evidence of a nerve root compression.") (transcript citations omitted), *report and recommendation adopted by* 2017 WL 4310531.

Moreover, the ALJ's decision is supported by the two State agency reviewing physicians who opined Plaintiff was capable of light exertional work. *See* Tr. 85-87, 110-12. Notably, these physicians both noted contradictory evidence regarding Plaintiff's gait (normal or antalgic) and need for a cane. (Tr. 86, 111) ("Although gait noted to be antalgic, there is no MDI to explain this and no indication of radiculopathy on exam. Indeed, gait noted to be normal during 8/2015 neurology exam where impression was lumbosacral spondylosis without myelopathy. Although she presented with a cane during CE, this is again not considered necessary as exam and imaging findings are inconsistent with its need."). Although Dr. Choi later noted radiculopathy at one point, *see* Tr. 438-39, he did not do so in visits before or after, *see* Tr. 393, 445, 450. *See also* Tr. 429 (Nurse Suit's diagnosis of radiculopathy).

The ALJ's decision that Plaintiff lacked more significant limitations in her ability to ambulate and was capable of performing the requirements of light work, is therefore supported by substantial evidence. This is so despite evidence in the record supporting a contrary conclusion, because "there is a 'zone of choice' within which the Commissioner can act, without the fear of court interference." *Buxton v. Halter,* 246 F.3d 762, 772-73 (6th Cir. 2001) ("The findings of the

---

5. "Myelopathy is disease of the spinal cord." *Mackey v. Comm'r of Soc. Sec.*, 2017 WL 6028679, at *2 n.1 (6th Cir.) (citing *Stedman's Medical Dictionary*).

Commissioner are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion.") (citation omitted). Here, the ALJ reviewed the entire record, weighed the evidence, and concluded that Plaintiff retained the ability to do light work subject to certain limitations. Her decision falls within the permissible "zone of choice" and the RFC determination is supported by substantial evidence.

Use of an Assistive Device

In a related argument, Plaintiff contends the ALJ erred in not including an assistive device – a cane or a rollator walker – in the RFC. She bases this argument on Nurse Suit's notes regarding her cane usage, and the "delivery ticket" indicating Plaintiff received a rollator walker.

If a "cane [is] not a necessary device for claimant's use, it cannot be considered an exertional limitation that reduced her ability to work." *Carreon v. Massanari*, 51 F. App'x 571, 575 (6th Cir. 2002). For an ALJ to find a hand-held assistive device is "medically required", "there must be medical documentation establishing the need for a hand-held assistive device to aid in walking or standing, and describing the circumstances for which it is needed (i.e., whether all the time, periodically, or only in certain situations; distance and terrain; and any other relevant information." SSR 96-9p, 1996 WL 374185, at *7. Although SSR 96-9p specifically addresses work in the sedentary range, courts have applied this definition in cases involving light work. *See, e.g., Ross v. Comm'r of Soc. Sec.*, 2018 WL 1406826, at *3 (S.D. Ohio); *Barton v. Comm'r of Soc. Sec.*, 2017 WL 6818345, at *17 (N.D. Ohio).

As set forth above, the ALJ specifically addressed Plaintiff's need – or lack thereof – for an assistive device. She also specifically addressed the delivery ticket:

> Regarding the claimant's use of a cane or rollator, the record does not support medical necessity. On April 21 and May 19, 2015 [sic], nurse practitioner Rebecca Suit of NSI noted that the claimant's gait was antalgic and she was using a cane for ambulation [citing Tr. 429, 434]. However, Dr. Choi of NSI consistently noted that

18

the claimant's gait and coordination were "normal"; muscle strength and tone were normal in all extremities; and there was no instability in any extremity (see above and see [Tr. 385]). Therefore, the undersigned gives little weight to the April 21 and May 19, 2015 [sic] findings from Nurse Suit. Furthermore, the claimant arrived at the April 11, 2017 hearing with a rolling walker/rollator and submitted what was purported to be a prescription for the rollator (see [Tr. 465]). However, what it is instead is simply a "Delivery Ticket" of a rollator dated March 13, 2017. The undersigned finds no medical basis for the use of any type of assistive device.

(Tr. 31-32).

To repeat what is stated above, the only evidence in the record of Plaintiff's cane usage consists of two notes from April and May 2016 from Nurse Suit. *See* Tr. 429, 434. Neither these notes, nor any others in the record, explain if and why a cane was "medically required" and in what circumstances. *See* SSR 96-9p, 1996 WL 374185, at *7. As such, the ALJ did not err in failing to include such a limitation in the RFC. *See, e.g., Ross*, 2018 WL 1406826, at *3 (finding ALJ's determination that cane was not medically necessary supported even when Plaintiff had a prescription because there were no exam findings associated with the prescription, and an examination after the prescription revealed a normal gait, and no use of a device); *Parrish v. Berryhill*, 2017 WL 2728394, at *12 (N.D. Ohio) ("While there are some indications in the medical records that Plaintiff was using a cane, this is insufficient to establish that the cane was medically required. Nor does Plaintiff cite to any medical records describing the circumstances for which a cane is needed as required by SSR 96-9p."), *report and recommendation adopted by* 2017 WL 2720332. Nor can Plaintiff's testimony about use of the cane demonstrate medical necessity. *See Mitchell v. Comm'r of Soc. Sec.*, 2014 WL 3738270, at *12 (N.D. Ohio). As such, the undersigned finds no error in the ALJ's decision to omit a cane from the RFC.

Plaintiff also argues that "substantial evidence exists that the rollator/walker that [Plaintiff] uses is prescribed (A.R. 465)[,] although admittedly the document reviewed at the hearing was not a prescription. A closer examination of the delivery ticket shows that the walker is largely paid for

by insurance and a co-pay (A.R. 465)." (Doc. 16, at 14). Plaintiff contends that Medicare requires a prescription for the insurance to pay for a walker and therefore "for purposes of this argument, the walker must have been prescribed or it would not have qualified for insurance coverage." *Id.* The face of the "delivery ticket" however, contradicts Plaintiff's claim. Although the ticket has separate columns for the "Ext. Amt." and "Co-Pay", but there is no explanation for this difference. *See* Tr. 465. And, the ticket specifically lists Plaintiff's insurance as "[n]one" and instructs that the rollator is to be "[b]ill[ed] to" Plaintiff. *See id*. In short, Plaintiff asked the ALJ (and this Court) to assume facts not in evidence and to read too much medical information into a non-medical document.[6] There is no other medical evidence in the record stating Plaintiff was prescribed a walker. The Court finds the ALJ's decision that there was no prescription for, and therefore no medical basis for, Plaintiff's use of a rollator walker, is supported by substantial evidence in the record.

## CONCLUSION

Following review of the arguments presented, the record, and the applicable law, the undersigned finds the Commissioner's decision denying DIB and SSI supported by substantial evidence and affirms that decision.

 s/James R. Knepp II  
United States Magistrate Judge

---

6. At the hearing, Plaintiff's counsel represented that this document was a "prescription for a walker that [Plaintiff] uses currently." (Tr. 59). And, although the ALJ agreed to keep the record open for an additional day as Plaintiff requested (Tr. 59, 75), Plaintiff did not do so, nor did she ever submit a walker prescription.